UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| SHARLA C. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:10 CV 437 |
| | ) | |
| TRADEWINDS SERVICES, INC., | ) | |
| BOARD OF DIRECTORS of | ) | |
| TRADEWINDS SERVICES, INC., AND | ) | |
| JOHN GOLD in his individual and official | ) | |
| capacities | ) | |

## OPINION AND ORDER

Presently before the Court is the Defendants' Motion to Dismiss the Third Amended Complaint. [DE 81]. Plaintiff responded to the motion to which the Defendants replied. For the following reasons, the Motion to Dismiss will be GRANTED as to all federal claims. The court declines supplemental jurisdiction over the remaining state law claims and they will be DISMISSED without prejudice.

## APPLICABLE STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires complaints to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2008) (quoting *Twombly,* 550 U.S. at 570). "A claim

1

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955) (internal quotation marks omitted). A complaint is sufficient if it gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank,* 614 F.3d 400, 404 (7th Cir.2010). On the other hand, a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago,* 631 F.3d 823 (7th Cir.2011).

## **FACTUAL BACKGROUND**

Plaintiff Sharla C. Williams ("Williams") has filed a Third Amended Complaint consisting of forty-six (46) page and seventeen (17) counts drawing upon both federal and state law and invoking this court's jurisdiction under federal question jurisdiction, 28 U.S.C. §1331, deprivation of a civil right, 28 U.S.C. §1343, and supplemental jurisdiction, 28 U.S.C. §1367. Defendants have moved to dismiss the Complaint in its entirety.

Before turning to the factual allegations pled in the Third Amended Complaint, it is necessary for the court to be mindful of what allegations cannot be considered in ruling on a motion to dismiss. The court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Fednav Int'l Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 837 (7th Cir.2010). However, in *Iqbal* the Supreme Court clarified that although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion. *Id. See also, Kadamovas v.*

*Stevens*, ___ F.3d ___, 2013 WL 452482 (7th Cir., Feb. 7, 2013) (stating that "legal assertions disguised as facts" need not be accepted by judge's as true). Accordingly, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, the plausibility standard calls for a "context-specific" inquiry that requires the court "to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937. This is "not akin to a 'probability requirement,' " but the plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678, 129 S.Ct. 1937. In this case, a review of the Third Amended Complaint demonstrates that the plaintiff has, in many instances, taken legal conclusions or speculation and attempted to cloak them in the form of factual allegations. Thus, throughout the factual recitation herein the court has omitted the Plaintiff's legal conclusions from the analysis.[1] Even read liberally, the Complaint's allegations, in many places, remain an enigma. With this said, the factual allegations in the Third Amended Complaint are as follows:

Plaintiff Sharla C. Williams ("Williams") is a black female[2] and former employee of Defendant Tradewinds Services, Inc. (Tradewinds"), an Indiana corporation. During the time of

---

[1] On several occasions, the Court instructed Williams that her Complaint did not comply with Fed.R.Civ.P. 8(a)(2); did not contain various attachments, and that it contained legal conclusions and other inappropriate allegations that were not factual in nature. [DE's 20, 45, 72]. Some of these averments were, in fact, omitted from subsequent Complaints but, as noted, many remain. In addition, it is worth noting that the Complaint is riddled with confusion in the sequence of events, omits names of individuals such as supervisors and, it appears, omits dates in an effort to avoid statute of limitations defenses that plaintiff was alerted to by defense counsel when she filed her original complaint in this cause. And, while unintelligibility and length are insufficient reasons by themselves to dismiss a complaint, *see Kadamovas v. Stevens*, ___ F.3d. ___, 2013 WL 452482 (Feb. 7, 2013), "length may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter." (*Id.* citing *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

[2] Nowhere is it specifically recited in the Complaint that Williams is black. However, she makes allegations that appear to suggest that she is, in fact, black.

Williams's employment at Tradewinds, Defendant Jon Gold ("Gold"), was the Chief Executive Officer.[3]

Williams's employment began in November, 1999 as a House Manager for Tradewinds. Her annual salary at that position was $22,000. (Third Amended Complaint, ¶'s 6-7). Shortly after she began her employment, Williams was promoted to General Manager of Independent Living at an annual salary of $32,000. (*Id.* at ¶'s 8-9). Williams replaced a white female formerly in that position but was paid $10,000 less annually than the former white general manager despite performing similar tasks requiring equal skill, effort and responsibility. (*Id.* at ¶'s10-11). When she inquired about the salary disparity, Gold told Wlliams that "black single women did not need that much money." (*Id.* at ¶12).

As part of her job responsibilities, Williams had independent authority to make purchases necessary to improve the living environment of the consumers so long as they did not exceed $400.00. (Third Amended Complaint, ¶14). Purchases greater than $400.00 required Gold's approval. (*Id.*). Williams made a number of requests for items to improve the quality of life for the disabled individuals served by Tradewinds. At some point (no dates are set out), Gold initiated an audit on the accounts managed by Williams.

Again, at some time not set forth in the Complaint, Tradewinds underwent a reorganization spurred by Gold. (Third Amended Complaint, ¶18). As part of the reorganization, Williams was removed as the General Manager of Independent Living and the position was renamed Director of Independent Living. (*Id.* at ¶20). The position of Director of Independent Living was temporarily

---

[3]Although it is not directly alleged in the Complaint, Tradewinds appears to be a business providing services for individuals with Special Needs. *See* http://tradewindservices.org.

given to a white female, (*Id.* at ¶21), and later permanently given to a white male. (*Id.* at ¶22). Williams was not provided an opportunity to apply for this newly titled position despite having the qualifications for it. (*Id.* at ¶'s 23-24). Plaintiff was placed in the position of a Qualified Mental Retardation Professional.[4] However, her job duties were the same as a Semi-Independent Living Program Waiver Coordinator ("SILP Waiver Coordinator"). (*Id.* at ¶25). Despite Williams's job duties being similar to a SILP Waiver Coordinator, her pay remained the same. Williams believed that she was not given the title of SILP Waiver Coordinator "as a form of harassment, humiliation, and retaliation." (*Id.* at ¶29).

At yet another undesignated time, a new individual, a second white male, was hired as the Director of Independent Living, Director of Human Resources, the Director of Residential Homes, and the Director of Employment Services. (Third Amended Complaint, ¶30). Williams trained this individual in the performance of his duties as the Director of Independent Living. This individual also replaced a black female as the Director of Human Resources. (*Id.* at ¶32). Williams was not given the opportunity to apply for this position.

In December 2006, Williams completed her Master's Degree. (*Id.* at ¶32). She was denied a promised $10,000 raise upon completion of her advanced degree. She also continued to be denied the title of SILP Waiver Coordinator. Subsequently, a white male with a high school diploma was hired into the position of Group Home Coordinator and paid a $10,000 raise despite not having the educational degree previously required for the position. Williams believes this was discriminatory.

In 2009, Tradewinds underwent an additional reorganization. As part of that reorganization,

---

[4]Williams refers to this as a "demotion." However, she later avers that her pay and job duties remained the same.

the positions of Director of Programs and Director of Independent Living were combined into one position. That position was given to a white female with a Bachelor's Degree. Williams was then asked to train the new Director who, in turn, became Williams's direct supervisor (*Id.* at 47).

On October 1, 2009, Williams spoke out in a staff meeting questioning the new company policy of withholding timely reimbursement of gas mileage for employees that she managed. Subsequently, Williams received a verbal and written reprimand to which she provided a written response.

On October 2, 2009, Tradewinds initiated an investigation of Williams asserting that she was extorting money from a consumer. (Third Amended Complaint, ¶53). On November 2, 2009, Tradewinds confronted Williams with an audit alleging theft over a five (5) year period between 2004 and 2009. (*Id.* at ¶55). Neither Tradewinds nor Gold reported Williams to the state authorities at that time. Williams had not been previously reprimanded at any time from 2004 - 2009 for improperly performing financial transactions nor was she made aware of any policies or procedures by Tradewinds concerning recipient financial management or financial accounting. (*Id.* at ¶'s 58-59). Williams received no training regarding financial management, financial accounting or quantification reimbursement. (*Id.* at ¶61). The audit did not address whether the allegedly unlawful transactions had been authorized by the consumer's Individual Support Plan.[5] (*Id.* at ¶62).

On November 2, 2009, the same date Williams received notice of the audit alleging theft, Williams filed a charge of discrimination ("the Charge") with the Gary Human Rights Commission, alleging race and sex discrimination. (Third Amended Complaint, Exh. 1). On November 6, 2009,

---

[5]Nowhere in the Third Amended Complaint is the concept of Individual Support Plan defined for the Court.

Tradewinds received notice of the Charge. Thereafter, Tradewinds reported the results of the audit to the state authorities claiming consumer endangerment. (*Id.* at ¶68). On November 10, 2009, Williams claims she was forced to resign. (*Id.* at ¶70). According to Williams she was threatened by Gold with criminal prosecution if she did not withdraw her EEOC claim. In addition, Williams claims she was promised back pay, vacation pay, release of all other monies owed to her, and a favorable reference by Tradewinds once she withdrew her complaint. (*Id.* at ¶'s 75-76).

On November 19, 2009, Williams formally withdrew her Charge; documentation by the Gary Human Rights Commission confirmed the withdrawal on December 8, 2009 as did the EEOC on February 8, 2010. (Third Amended Complaint, ¶'s 77-79).

On November 28, 2009, Williams was determined to be eligible for unemployment benefits. (Third Amended Complaint, ¶92). After notice was provided to Tradewinds of Williams's eligibility for benefits, Gold instructed Williams to withdraw her unemployment claim or face criminal charges for the alleged theft of funds from consumers. Williams did not withdraw her claim. (*Id.* at ¶94).

In December 2009, Williams applied for a position as a Case Manager at the Mental Health Center. (Third Amended Complaint, ¶80). Williams provided the name of her last male supervisor at Tradewinds as a reference although this was not her supervisor on the date she resigned. (*Id.* at ¶81). Williams received an offer of employment and given a start date for the position. The employer then requested the name of Williams's last supervisor prior to her resignation, which Williams eventually provided. (*Id.* at. ¶'s 83-84). At some point (no date is provided), the offer of employment to Williams by Mental Health Center was withdrawn. Williams believes the offer of employment was withdrawn after discussions with Tradewinds supervisors and employees.

This next portion of the Third Amended Complaint is difficult to follow and out of chronological sequence with the averments that follow it. Williams states that in April, 2011 (two years later) she was offered a position with some unnamed entity and given a start date. (Third Amended Complaint, ¶88). She states the employer withdrew the position some point after verification of prior employment forms were mailed to Tradewinds. No date is given as to when this occurred. Plaintiff asserts again, upon information and belief, that the position was withdrawn due to information received by the employer related to her employment at Tradewinds. (*Id.* at ¶91).

The Complaint then goes on to discuss the criminal charges that were brought against Williams – and, once again, the complaint does not place the events in sequential order. At paragraph 85, Williams avers that in February 2010, criminal charges were commenced against her relating to the internal investigation that occurred during her employment at Tradewinds. (Third Amended Complaint, ¶85). At paragraph 95, Williams avers that "on January 18, 2010, Tradewinds managerial employees caused an incident report to be filed with the Lake County Sheriff's Department alleging acts of theft and extortion of a consumer." (*Id.* at 95). She then avers that on February 24, 2010, Tradewinds "managerial employees" filed an offense report with the Gary Police Department. (*Id.* at ¶97). In addition she asserts that unspecified employees visited a consumer's home to persuade the consumer that Williams had stolen her property. (*Id.* at ¶99). All of these events relating to the criminal case were commenced after Williams was no longer an employee of Tradewinds.

On February 24, 2010, a consumer of Tradewinds filed a petition for a protective order (presumably against Williams) in the Lake Superior Court, Gary, Indiana. The petition alleged financial exploitation but was denied by the Superior Court Judge. On February 26, 2010, a

probable cause affidavit was completed, and then filed on March 2, 2010, alleging events from the incident and offense reports filed by unspecified Tradewinds employees in January and February. Williams was then charged by Information with Class D felonies of exploitation of a dependent and theft. On March 4, 2010, a newspaper published the fact of Williams's arrest and listed specific funds allegedly misappropriated by her. Williams states that the information for the newspaper story came from Tradewinds and was false. (*Id.* at ¶110).

On March 23, 2010, Williams filed a new Charge of Discrimination ("Second Charge") alleging discrimination based on race, sex and retaliation for the filing of the original Charge. Plaintiff received a Notice of Right to Sue from the EEOC on July 31, 2010. She filed the instant suit on October 29, 2010 alleging a host of claims.

On August 19, 2011, the criminal charges against Williams were dismissed for insufficient evidence to support a finding of probable cause.

## **DISCUSSION**

Tradewinds moves to dismiss the Complaint in its entirety contending that none of Williams 17 counts state a claim for relief. Because the Court ultimately concludes that none of the counts over which this court has original jurisdiction state a claim, it declines supplemental jurisdiction over the state claims and thus, need not address the validity of these claims. Thus, the focus *infra* is on the federal claims Williams asserts.

**Counts I and II – Title VII discrimination and retaliation**

In Counts I and II of her Third Amended Complaint, Williams asserts claims of race discrimination and retaliation against Tradewinds. She bases these assertions on her factual

9

averments in the opening 117 paragraphs of her Complaint, many of which clearly fall outside the scope of her EEOC charges or which are time-barred for failure to perfect the claim through the EEOC conciliatory process. As a result, Defendants move to dismiss the Title VII claims asserting that many of the events set out in the opening 117 paragraphs are time-barred and, even if some were actionable, Williams withdrew her first charge of discrimination and did not receive a right to sue letter, thereby failing to exhaust her administrative remedies with respect to the events within the scope of that charge. With respect to her second charge, filed on March 23, 2010, the Defendants point out that the facts in the Complaint do not state a claim for relief.

A plaintiff's right to sue in federal court for employment discrimination under Title VII is dependent on filing a timely charge of discrimination with the EEOC and receiving a right-to-sue notice. *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378–79 (5th Cir.2002). Failure to exhaust administrative remedies "is not a procedural 'gotcha' issue," but "a mainstay of proper enforcement of Title VII remedies." *McClain v. Lufkin Industries, Inc.,* 519 F.3d 364, 272 (5th Cir.2008), *cert. denied,* 129 S.Ct. 198 (2008).

Under Title VII, 42 U.S.C. § 2000e–5(e)(1), a charge of discrimination must be filed with the EEOC within 180 days after the occurrence of the alleged discriminatory practice unless the complainant has instituted proceedings with a state or local agency with the authority to grant of seek relief from unlawful employment practices, under which circumstances the period for filing such a charge with the EEOC was extended to 300 days. *Griffin v. City of Dallas,* 26 F.3d 610, 612 (5th Cir.1994).

In this case, Williams's first charge of discrimination, filed on November 2, 2009 encompassed events taking place between October 2, 2009 and November 2, 2009 and asserted race

10

and gender discrimination. (Charge of Discrimination, DE. 78-3). Before the Charge was fully investigated and a Notice of Right to Sue issued, Williams voluntarily withdrew the Charge on November 19, 2009. Williams asserts she withdrew the Charge to attain certain post-resignation benefits offered to her by Tradewinds pursuant to some arrangement between her and Tradewinds CEO, Gold.

The problem for Williams, even accepting as true her assertion that her former employer induced her to withdraw the Charge with the promise of post-employment benefits that were never actually conferred, is that established case law holds that a claimant who voluntarily withdraws her administrative charge of discrimination before obtaining a right-to-sue letter, abandons her claims in the charge, fails to exhaust administrative remedies and may not sue in court. *Schwinge v. Deptford Tp. Bd. of Educ.* 2011 WL 689615, 5 (D.N.J. 2011); *Bowers v. Nicholson,* 2007 WL 3047223, 8 (S.D.Tex.,2007) ("Courts considering whether a plaintiff who withdraws an administrative complaint has exhausted his or her administrative remedies have concluded that a knowing and voluntary withdrawal of discrimination complaints constitutes a failure to exhaust administrative remedies."). Prior to withdrawing her Charge, Williams could have ensured, perhaps through a written settlement agreement, that her withdrawal of the Charge would not be in vain.[6] She did not do so. Instead, she now seeks to sue on the very acts contained in the Charge she withdrew from the EEOC and she is foreclosed from doing so. See, e.g., *Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir.1993); *Rivera v. United States Postal Service,* 830 F.2d 1037, 1039 (9th Cir.1987) (to "withdraw is to abandon one's claim, to fail to exhaust one's remedies"); *See also*

---

[6]There is some suggestion in the EEOC paperwork attached to the Complaint that despite withdrawing her Charge, Williams refused to sign a settlement agreement with Tradewinds.

*Wrenn v. Secretary, Dep't of Veterans Affairs,* 918 F.2d 1073, 1078 (2d Cir.1990) (allowing a plaintiff to abandon the administrative remedies he has initiated [under the ADEA] would tend to frustrate the ability of the agency to deal with complaints"). Thus, her claims of race and gender discrimination in Count I are dismissed for failure to exhaust her administrative remedies.

As for her Second Charge, upon which Count II is based, the Charge itself limits the discriminatory event to the date she resigned, November 10, 2009, yet the body of the Charge asserts that Tradewinds retaliated against her after she filed her initial Charge, forced her to resign and then continued to retaliate by initiating criminal action against her, giving her poor references, and reporting negative information about her to a newspaper.[7]

To state a claim for retaliation under Title VII, a plaintiff must allege that she: (1) engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) that a causal connection exists between the two. *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 664 (7th Cir.2006). Here, Williams has not sufficiently alleged a claim of retaliation for various reasons. Williams has altogether failed to connect together facts in her complaint which set forth a claim that the alleged acts of retaliation had anything to do with her prior EEOC charge or her race. In fact, Williams has managed to plead facts completely inconsistent with her assertion that Tradewinds investigation of her and the later brought criminal charges can be connected to her filing of an EEOC charge. At paragraph 53 of her Third Amended Complaint, Williams alleges that "on or about October 2, 2009 Tradewinds initiated an investigation complaining that the plaintiff was exhorting [sic] money from a consumer." Williams did not file her first Charge until November 2, 2009, a

---

[7]The specific facts in the Second Charge do not assert that Williams's "forced resignation" was due to race or gender discrimination although she makes a blanket statement that she believes she was discriminated against based on her gender, race and in retaliation for her prior Charge.

month after Tradewinds began its internal investigation. Moreover, the Complaint does not include any allegations about this investigation to suggest that it was harassing, racially motivated or motivated by some other prohibited characteristic. If the investigation was initiated soon *after* plaintiff filed her EEOC Charge, the timing might suggest a retaliatory motive, but plaintiff has not made this assertion. In fact, she has specifically pled herself out of court on this issue by failing to causally connect the investigation with her statutorily protected activity. *See generally*, *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (a party may plead herself out of court by pleading facts that show she has no legal claim). For this reason, Williams's claims of retaliation under Title VII must be dismissed.[8]

**Count III**

In Count III, of her Third Amended Complaint, Williams asserts a due process claim under the Fourteenth Amendment against Tradewinds and Gold. The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. For a plaintiff to assert a colorable claim that the defendants violated her due process rights under the Fifth and Fourteenth Amendments, she "must show that [defendant's] conduct constituted state action; otherwise, there is no constitutional violation." *Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 137 (2d Cir.2002). *See also Jackson v. Metro. Edison Co.,* 419 U.S. 345, 349 (1974) ("[P]rivate action is immune from the restrictions of the Fourteenth

---

[8]Williams also appears to assert the theory that even after she withdrew her Charge with the EEOC she continued to be subjected to retaliation by Tradewinds in the form of poor employment references, pursuit of criminal claims against her for theft, etc. The only protected activity alleged by Williams throughout the Complaint is the fact that she filed the initial Charge of Discrimination on November 2, 2009, which she then withdrew on November 19, 2009. Thus, she is, in essence, asserting that she was subjected to retaliatory conduct for withdrawing from protected activity. Whether a plaintiff could state a claim for retaliation by asserting that they "unengaged" in their alleged protected activity has not been addressed by the parties in the briefs, but it is a unique legal theory.

13

Amendment ....")

Here, Williams does not get past this initial hurdle of alleging plausible state action on the part of Tradewinds or Gold. In her Complaint, Williams admits that Tradewinds is a private entity licensed to do business in Indiana with its principal place of business in Gary, Indiana. She further alleges that Gold is the CEO of Tradewinds. Because both defendants are private actors, " 'state action may be found if, though only if, there is such a close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Perpetual,* 290 F.3d at 137 (quoting *Brentwood Academy v. Tenn. Secondary Sen. Athletic Ass'n,* 531 U.S. 288, 295 (2001) (internal quotation marks omitted)).

Nowhere, throughout the entirety of the Complaint, does Williams plead facts that would establish that the state had such a close nexus to the conduct of the Defendants that it can be said to be intricately intertwined in the challenged action. At most, Williams asserts that Tradewinds receives state funding and is regulated by the State of Indiana. This is identical to the assertion made against a private nursing home in *Sidell v. CRF First Choice, Inc.* 2010 WL 2732913, 2 -3 (S.D.Ind. 2010). There, an employee who engaged in whistleblowing activities against the nursing home sued under 42 U.S.C §1983 claiming due process violations after she was fired. The court, citing the Supreme Court's decision in *Blum v. Yaretsky,* 457 U.S. 991, 1012 (1982), held that neither close regulation by the state nor the requirement that it fund certain medical or nursing services renders the decisions of a private care provider "state action." Consequently, the court concluded that the decision of the employer to terminate the plaintiff's employment was not state action and thus, she failed to plead facts which would support the plausibility of her entitlement to relief under 42 U.S.C. § 1983.

Likewise, in the present case, there are no facts pled that support the plausibility of Williams's entitlement to relief under the Fourteenth Amendment. Neither Tradewinds or Gold can be plausibly determined to be state actors or intertwined with the state so that their acts can be said to be the equivalent of state action. As a result, Williams's due process claim must be dismissed.

**Count XI – Section 1981**[9]

Williams's next federal claim is brought under 42 U.S.C. §1981 and alleges conduct similar to the conduct alleged as part of her Title VII discrimination and retaliation claims, but more specifically asserts that Tradewinds underwent a reorganization, new job opportunities opened as a result of the reorganization, she was not provided an opportunity to apply for the new positions at Tradewinds, and that Tradewinds failure to hire her for any of the positions for which she was qualified was due to race.

As previously set out, Williams asserts claims under both Title VII and 42 U.S.C. §1981. This latter statute protects "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Civil Rights Act of 1991, Pub.L. No. 102–166, § 101, 105 Stat. 1071, 896 codified at 42 U.S.C. § 1981(b). For purposes of liability, the same substantive standards apply to claims under either statute. *Thanongsinh v. Board of Educ.* 462 F.3d 762, 782 (7th Cir.2006). Nevertheless, there are different time limitations and restraints on bringing the claims. Unlike Title VII claims, a plaintiff is under no EEOC filing and exhaustion requirements when bringing a cause of action under § 1981, but must bring the claim within two years if it arises out of the pursuit of employment and within four

---

[9]The first sentence of this Count in the Third Amended Complaint contains a typographical error in that it lists the plaintiff as Joseph A. Adams.

years if the claim is based on post-hire conduct. *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 539 (7th Cir.2007); *Dandy v. United Parcel Service, Inc.,* 388 F.3d 263, 269 n. 4 (7th Cir.2004). For limitations purposes, discrete employment actions such as, termination, discipline, or refusal to hire or promote, are deemed to have been taken the day they occur. *Beamon v. Marshall & Isley Trust Co.*, 411 F.3d 854, 860 (7th Cir.2005).

Defendants assert that Williams section 1981 claims are barred by the two-year statute of limitations because she effectively alleges a failure to hire her for new positions which became available. Williams, in turn, argues that the four-year statute of limitations applies because the acts complained of constitute a failure of Tradewinds to promote her to those new positions. The Third Amended Complaint asserts that Tradewinds underwent a reorganization at some time prior to 2006. It then goes on to allege that in 2006, Williams received a masters degree and, due to a reorganization, was not given the opportunity to apply for a Director of Independent Living position and was denied the position of SILP Waiver Coordinator.

Regardless of whether a two or four-year statute of limitations period applies, the Complaint suffers from such vague allegations that it simply does not meet the plausibility test. For example, the Complaint is void of any allegations that she applied for a vacancy, that the conduct of Tradewinds prevented her from applying, or that she was ever rejected for a position for which she applied. The Seventh Circuit has held that "[i]f a plaintiff does not apply for a vacancy that is posted, [she] cannot make a *prima facie* case for unlawful discrimination ... unless [she] demonstrates that the employer's discriminatory practices deterred [her] from applying." *Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 558 (7th Cir.2004); see also *Grayson v. City of Chicago,* 317 F.3d 745, 748 (7th Cir.2003) (holding that in a failure to promote claim the plaintiff must show that

she applied for and was rejected for the promotion to establish an adverse employment action). Moreover, to the extent, that the claim could be deemed a "failure to hire," again there are no facts in the complaint alleging that she applied for any position for which she was not hired. The absence of these allegations alone, are fatal to her section 1981 claim.

**Count XVI - Hostile Work Environment Title VII**
**Count XVII - Hostile Work Environment Section 1981**

In Counts XVI and XVII, Williams asserts claims of hostile work environment under Title VII as well as 42 U.S.C. §1981. Defendant moves to dismiss both counts asserting that the Title VII claim is outside the scope of any administrative charge of discrimination filed by Williams and the Section 1981 claim fails to state a claim for relief.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Teal v. Potter,* 559 F.3d 687, 691 (7th Cir.2009). "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992). Allowing a civil complaint to include allegations outside the scope of the EEOC complaint "would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the [employer] of notice of the charge." *Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). A plaintiff may litigate claims that weren't contained in the person's EEOC complaint only if those claims are "like or reasonably related" to the allegations of the administrative charge and can be seen as "growing out of such allegations." *Teal v. Potter,* 559 F.3d at 691–692.

Williams filed her second charge of discrimination on March 23, 2010. The Charge specifically states that the discrimination started and ended on the date of her resignation, November 10, 2009. Further, a plain reading of Williams's administrative charge confirms that she did not

17

include any allegations about harassment or a hostile work environment created by Defendant prior to filing her lawsuit in this court. The Charge states, "I believe I have been discriminated against based on my sex/female and race/black and in retaliation for the discrimination charge I filed..." And while the charge does assert that after she filed her initial charge, she "became a recipient of harassment, intimidation, threatened with criminal prosecution and forced by the Respondent to tender my resignation on November 10, 2009," there are no details provided so as to permit the EEOC to perform its investigatory duty. Indeed, a charge is required to have some degree of specificity. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111-1112. "Some detail, beyond a statement that 'I believe I have been discriminated against because of my race, Black' is necessary to allow the agency to perform its statutory duty." *Id.* Here, aside from the general mention of "harassment," there is no mention anywhere in the Charge of any specific events creating a hostile work environment during Williams's employment. As a result, the court concludes that her claim of a hostile work environment based on race and gender is outside the scope of her EEOC charge and therefore, must be dismissed.

As for her section 1981 claim, to plausibly state a claim for a hostile work environment, she must allege discriminatory conduct that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir.2002). "To state a claim for a hostile work environment ... a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [membership in a protected category.]"

18

*Patane,* 508 F.3d at 113. Factors to consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id.*

Here, the Third Amended Complaint contains virtually no facts that would establish any of the above required elements. Williams's complaint generally asserts that she suffered harassment based on race of a sufficient and pervasive nature that was subjectively and objectively hostile. (Third Amended Complaint, ¶'s 321-326). However, the factual underpinnings for these allegations do not bear any resemblance to these legal conclusions she has drawn. For instance, plaintiff has not set out any facts showing a series or pattern of severe and pervasive conduct by her employer. She has not alleged any allegations, other than boilerplate language, that she was subjected to harassment based on her race. The only facts alleged are: (1) that Williams spoke out at a staff meeting regarding a policy matter and was later reprimanded; and (2) that Tradewinds initiated an investigation of Williams's accounts because it believed she had been extorting money from a client. Neither of these facts alone or, in combination, are sufficient to create a plausible belief that Tradewinds engaged in a racially hostile work environment. Thus, her claim of a hostile work environment under §1981 is dismissed.

**State Law Claims**

In addition to all of her federal claims, Williams asserts a number of state law supplemental claims. Supplemental jurisdiction of such claims may be declined where a court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *Contreras v. Suncast Corp.,* 237 F.3d 756, 766 (7th Cir.2001). "[I]n the usual case in which all federal-law claims are eliminated

before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Thus, the "sensible presumption" is that if the federal claims drop out before trial, "the district court should relinquish jurisdiction over the state-law claims." *Williams Electronics Games, Inc. v. Garrity,* 479 F.3d 904, 907 (7th Cir.2007). Consistent with these guidelines, because Wililams's federal claims are subject to dismissal, the court shall relinquish jurisdiction over the remaining state-law claims.

## **CONCLUSION**

Based on the foregoing, the Defendants' Motion to Dismiss the Third Amended Complaint is GRANTED with respect to all federal claims. The Court declines to exercise supplemental jurisdiction over the remaining pendant state law claims and dismisses those claims without prejudice.

Entered: This 4th day of March, 2013

s/ William C. Lee<br>United States District Court